**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br>vs. )<br>)<br>JOSEPH DARYL YOUNG, )<br>)<br>Defendant. )<br>_____ ) | Case No.: 2:14-cr-00323-GMN-NJK<br><br>**ORDER** |

On February 2, 2017, the Court sentenced Defendant Joseph Daryl Young ("Defendant") as to Count 1 of the Indictment. (ECF No. 57).  As indicated at sentencing, the Court now provides a written order regarding Defendant's prior convictions as crimes of violence.

In Defendant's Objection to the Presentence Investigation Report, (ECF No. 43), he argues that his Nevada conviction for Voluntary Manslaughter with Use of a Deadly Weapon under Nevada Revised Statute ("N.R.S.") 193.165 and 200.080 and his Nevada conviction for Sexually Motivated Coercion under N.R.S. 207.190 and 207.193 do not qualify as "crimes of violence" under the United States Sentencing Guidelines Manual ("U.S.S.G.").  The Government filed a Response, (ECF No. 47), and Defendant filed a Supplement to the Objection, (ECF No. 51).  Upon request for additional briefing from the Court, the Defendant filed a second Supplement to the Objection, (ECF No. 53), and the Government filed a Response, (ECF No. 55).

Consistent with its determination at sentencing, the Court finds that both prior convictions qualify as crimes of violence pursuant to U.S.S.G § 2K2.1.

I.      **LEGAL STANDARD**

To determine whether a prior conviction constitutes a crime of violence, courts generally apply the formal categorical approach. *See Taylor v. United States*, 495 U.S. 575, 600 (1990).

1    "Under the categorical approach, [courts] do not look to the facts of the underlying conviction,

2    but rather to the state statute defining the conviction." *United States v. Melchor-Meceno*, 620

3    F.3d 1180, 1183 (9th Cir. 2010) (brackets and internal quotation marks omitted).  "That is,

4    [courts] consider whether the elements of the offense are of the type that would justify its

5    inclusion within the sentence-enhancing category, without inquiring into the specific conduct of

6    this particular offender." *United States v. Spencer*, 724 F.3d 1133, 1137 (9th Cir. 2013).  A

7    prior conviction constitutes a crime of violence under this approach if the statute of conviction

8    satisfies either the elements clause or the enumerated offenses clause of U.S.S.G. § 4B1.2. *See*

9    *United States v. Espinoza-Morales*, 621 F.3d 1141, 1145 (9th Cir. 2010).

10          In applying the enumerated offenses clause, "sentencing courts compare the elements of

11   the statute of conviction with a federal definition of the crime to determine whether conduct

12   proscribed by the statute is broader than the generic federal definition." *United States v.*

13   *Quintero-Junco*, 754 F.3d 746, 751 (9th Cir. 2014) (internal quotation marks omitted).  The

14   "generic federal definition of a crime is "the offense as commonly understood." *Descamps v.*

15   *United States*, 133 S. Ct. 2276, 2281 (2013).  Elements are the "constituent parts of a crime's

16   legal definition — the things the prosecution must prove to sustain a conviction." *Id.* at 2248.

17   **II.      DISCUSSION**

18          As a preliminary matter, the Court must determine whether to apply the 2015 or

19   amended 2016 version of the Sentencing Guidelines.  "Although a district court usually applies

20   the version of the Sentencing Guidelines in effect on the date of a defendant's sentencing, the

21   Ex Post Facto Clause of the United States Constitution requires that if the Guidelines have

22   undergone substantive changes that would disadvantage the defendant, then the defendant is to

23   be sentenced under the Guidelines in effect at the time of the offense, rather than [sic] at

24   sentencing." *United States v. Gallegos-Galindo*, 704 F.3d 1269, 1273 (9th Cir. 2013) (citation

25   omitted).

1   Here, the notable difference between the two versions is the relative location of

2   "voluntary manslaughter" and "forcible sex offense" in the text of U.S.S.G. § 4B1.2(a)(2).[1]

3   Specifically, the 2015 version lists these offenses as crimes of violence in the commentary of §

4   4B1.2, whereas the 2016 version lists the offenses in the actual text.  Defendant argues that, to

5   the extent the Court finds either offense qualifies as a crime of violence under the enumerated

6   offenses clause, the Court must apply the 2015 Sentencing Guidelines. (*See* Def.'s Suppl. Resp.

7   8:16–17, ECF No. 53).  As the basis of this argument, Defendant asserts that the commentary

8   should be given less effect than the actual text of § 4B1.2 or else not apply at all post *Johnson*.

9   (*See Id.* 14:17–15:20); *see also Johnson v. United States*, 135 S. Ct. 2251 (2015).  While the

10  Court does not agree with this conclusion, it recognizes that some ambiguity exists as to this

11  question.  Accordingly, and to avoid Ex Post Facto concerns, the Court applies the older

12  version of the Guidelines.

13  **A.  Enumerated Offenses in the Commentary**

14  The Supreme Court has recognized that "commentary may 'interpret [a] guideline or

15  explain how it is to be applied,' 'suggest circumstances which . . . may warrant departure from

16  the guidelines,' 'or provide background information, including factors considered in

17  promulgating the guideline or reasons underlying promulgation of the guideline.'" *See Stinson*

18  *v. United States*, 508 U.S. 36, 41 (1996) (quoting U.S.S.G. § 1B1.7).  In *Stinson*, the Supreme

19  Court held that commentary "which functions to interpret a guideline or explain how it is to be

20  applied" is binding. *Id.* at 42-43 (internal quotation marks and citations omitted).  However, the

21  Supreme Court noted that where "commentary and the guideline it interprets are inconsistent in

22  that following one will result in violating the dictates of the other, the Sentencing Reform itself

23  commands compliance with the guideline." *Id.* at 43.

---

[1] The applicable guideline section for purposes of Defendant's sentencing is U.S.S.G § 2K2.1.  This section adopts the meaning of "crimes of violence" as defined in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2.  Accordingly, any analysis of the enumerated offenses clause necessarily implicates § 4B1.2.

1    The Ninth Circuit has previously held that the offenses enumerated in Application Note

2    1 of the commentary are *per se* crimes of violence under the Guidelines. *See United States v.*

3    *Rodriguez-Guzman*, 506 F.3d 738, 741 (9th Cir. 2007).  However, relying on a recent decision

4    in the First Circuit, Defendant argues that these offenses can no longer constitute *per se* crimes

5    of violence after *Johnson*. (*See* Def.'s Objection 15:9–11, ECF No. 43); *see also United States*

6    *v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016).  According to Defendant, such offenses do not

7    "fall into either of the two categories of crimes the guideline still validly recognizes: (1) those

8    that 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the

9    person of another' and (2) those that are 'burglary of a dwelling, arson, or extortion, [or]

10   involve[] use of explosives.'" (*Id.* 15:15–19).  Absent the residual clause, Defendant contests

11   there is nothing within § 4B1.2's text to serve as an anchor for Application Note 1's

12   enumerated offenses. (*Id.* 16:4–6).

13   Notwithstanding the foregoing, courts in this circuit have continued to find that

14   enumerated offenses listed in the commentary constitute *per se* crimes of violence post-

15   *Johnson*. *See e.g., Alvarado v. United States*, 2016 WL 6302517, *4 (C.D. Cal. Oct. 14, 2016);

16   *United States v. Kinman*, 2016 WL 6124456, *5 (S.D. Cal. Oct. 20, 2016) (stating that "all

17   enumerated offenses of the Career Offender guidelines qualified as crimes of violence, whether

18   those offenses were listed in the text or Application Note 1."); *United States v. Bacon*, 2016

19   WL 6069980, *4 (E.D. Wash. Oct 14, 2016) ("Kidnapping and forcible sex offense are

20   enumerated in Application Note 1 to 4B1.2 and are 'per se' crimes of violence.").  While the

21   Ninth Circuit has not directly addressed the issue, it has implied that the enumerated offenses in

22   the commentary still have authority. *See United States v. Tate*, 2016 WL 4191909, at *7 (9th

23   Cir. 2016) (finding second-degree robbery as a crime of violence under "§§ 4B1.2(a)(2) and

24   4B1.2's Application Note 1."); *see also United States v. George Garibay*, 2017 WL 344315, at

25   *1 (9th Cir. Jan. 24, 2017) (rejecting the argument that attempted murder is not a "crime of

1   violence" when the commentary to § 4B1.2 lists attempted murder among the enumerated

2   offenses).

3   Additionally, as the Government points out, the structure of Application Note 1 itself

4   indicates that the enumerated offenses in the commentary do not rely on the residual clause.

5   (*See* Gov.'s Resp. 8:3–16).  Notably, the commentary's enumerated offenses are listed

6   separately from any residual clause language, closely mirroring the separation of the two

7   clauses in the actual text of § 4B1.2.  Furthermore, the commentary's enumerated offenses

8   include crimes already set forth in the actual text (e.g. arson and extortion), indicating an

9   intention to expand upon the list of enumerated offenses rather than create a separate list under

10  the residual clause.  To interpret otherwise would create surplusage, as an offense like arson—

11  which is enumerated in both the actual text and the commentary—would be implicated under

12  both the enumerated offenses clause and the residual clause.

13  Based on the above, the Court finds that the offenses enumerated in the commentary

14  constitute *per se* crimes of violence for purposes of sentencing.  The Court therefore turns its

15  attention to whether Defendant's prior crimes are broader than the generic federal definition of

16  the offense. *See Quintero-Junco*, 754 F.3d at 751.

17  **B.  Nevada Voluntary Manslaughter**

18  The Guideline's commentary includes "manslaughter" as an enumerated crime of

19  violence.  Defendant was convicted of Voluntary Manslaughter with Use of a Deadly Weapon

20  under N.R.S. 193.165 and 200.080.  Nevada law defines manslaughter as "the unlawful killing

21  of a human being, without malice express or implied, and without any mixture of deliberation."

22  Nev. Rev. Stat. § 200.040.  "In cases of voluntary manslaughter, there must be a serious and

23  highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible

24  passion in a reasonable person, or attempt by the person killed to commit a serious personal

25  injury on the person killing." *Id.* § 200.050.

The federal generic definition of manslaughter includes both "voluntary manslaughter (intended homicide in a heat of passion upon adequate provocation) and involuntary manslaughter (unintended homicide under certain circumstances)." *United States v. Gomez-Leon*, 545 F.3d 777, 791 (9th Cir. 2008).  Under the modern definition, generic manslaughter "incorporates, at most, a mens rea of recklessness." *Id.*  In interpreting California's similarly worded voluntary manslaughter law, the Ninth Circuit has found such language to fall within generic federal definition. *See United States v. Bonilla-Montenegro*, 331 F.3d 1047, 1051 (9th Cir. 2003).  Here, the Court likewise finds that Nevada voluntary manslaughter clearly falls within the federal definition, and therefore Defendant's conviction of Voluntary Manslaughter with Use of a Deadly Weapon constitutes a crime of violence under the enumerated offenses clause.

## C.  Nevada Sexually Motivated Coercion

The Guideline's commentary includes "forcible sex offenses" as an enumerated crime of violence.  Although the Ninth Circuit "ha[s] never comprehensively defined this crime, [it] ha[s] instructed that the term should be defined with reference to its ordinary, contemporary, and common meaning." *United States v. Acosta-Chavez*, 727 F.3d 903, 908 (9th Cir. 2013).  Thus, a forcible sex offense "simply requires a sexual act where consent to the conduct: (1) is not given; or (2) is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced." *Quintero-Junco*, 754 F.3d at 753.

Here, Defendant was convicted of Sexually Motivated Coercion under N.R.S. 207.190 and 207.193.  Under Nevada's coercion law, it is unlawful for a person to act with intent to "compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing . . ." Nev. Rev. Stat. § 207.190.  On its face, Nevada coercion therefore satisfies the "consent" element of the generic definition of forcible sex offenses.  Defendant argues, however, that Nevada sexually motivated coercion does not require the commission of a

"sexual act" and therefore is broader than the federal definition. (*See* Def.'s Suppl. Resp 6:19–20).

Under N.R.S. 207.193, "an offense is 'sexually motivated' if one of the purposes for which the person committed the offense was his or her sexual gratification." Nev. Rev. Stat. § 207.193.[2]  According to Defendant, a person can commit a non-sexual act and still be motivated by "sexual gratification." (*See* Def.'s Suppl. Resp 7:3–5).  As an example, Defendant asserts that "a husband who derives 'sexual gratification' from seeing his wife in a certain dress . . . could 'threat[en]' her with 'physical force' if she does not wear that dress on their next date." (*Id.* 7:10–13).  The Court disagrees.  Rather, the Court finds that an act motivated by "sexual gratification" necessarily makes it a "sexual act."

In interpreting statutes with similar language, the Ninth Circuit has previously focused on a defendant's intent for sexual gratification rather than the actual manner of the act.  For instance, an Oregon statute concerning sexual abuse of a minor required that a defendant's "touching was done for the purpose of sexual gratification, placing the focus on the intent rather than the manner of the touching." *See United States v. Rocha-Alvarado*, 843 F.3d 802 (9th Cir. 2016).  The Ninth Circuit stated that "regardless of the manner of touching . . . the Oregon statute [] criminalize[d] conduct that is sexual as it expressly defines "sexual contact" through its relation of sexual gratification." *Id.*  While the Nevada statute does not go as far as to expressly define a "sexual act," the Court is persuaded by the general principle that a defendant's sexual intent informs the characterization of an act as sexual.

---

[2] Defendant argues that "[b]ecause a Judge, rather than a jury, makes the sexual-motivation finding under 207.193, the sexual nature of Nevada sexually motivated coercion is not an element of the offense." (*See* Def.'s Suppl. Resp. 6:12–18).  The Court disagrees.  N.R.S. 207.193 requires virtually all of the fundamental protections of the criminal process before a finding of sexual motivation can be made. *See Am Civil Liberties Union of Nev. v. Masto*, 670 F.3d 1046, 1059 (9th Cir. 2012).  Moreover, conviction under 207.193 is sufficient to require registration as a sex offender. *Id.*  The Court thus finds the sexual nature of the offense under N.R.S. 207.193 to be a constituent part of the crime's legal definition. *Descamps*, 133 S. Ct. at 2248.

This determination is consistent with the ordinary, contemporary, and common meaning of the term. *Acosta-Chavez*, 727 F.3d at 908.  Merriam-Webster dictionary defines in relevant part a "sex act" as "an act performed with another for sexual gratification." Merriam-Webster Dictionary, *Sex Act*, https://www.merriam-webster.com/dictionary/sexact (last visited Feb 13, 2017).  The common definition thus focuses on the intent behind an act, rather than the manner of the act itself.  Accordingly, the Court finds that Nevada's sexually motivated coercion law falls within the federal definition of "forcible sex offense" and therefore constitutes a crime of violence under the enumerated offenses clause.

III.   **CONCLUSION**

Based on the foregoing, the Court finds that Defendant's prior convictions of voluntary manslaughter and sexually motivated coercion qualify as crimes of violence for purposes of sentencing.

**DATED** this ___17___ day of February, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge